422 So.2d 41 (1982)
Joanne REINHART, Appellant,
v.
SEABOARD COAST LINE RAILROAD COMPANY and State of Florida Department of Transportation, Appellees.
No. 81-2105.
District Court of Appeal of Florida, Second District.
October 15, 1982.
Rehearings Denied November 15, 1982.
*42 Elihu H. Berman of Krug, Berman & Silverman, Clearwater, for appellant.
Stephen C. Chumbris of Greene, Mann, Rowe, Stanton, Mastry & Burton, St. Petersburg, for appellee Seaboard Coast Line Railroad Co.
James B. Thompson and Clark Robbins of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellee Dept. of Transp.
SCHEB, Judge.
The issue in this appeal is whether the trial court erred in directing a verdict in favor of appellees at the close of appellant's evidence. We hold that it did and reverse.
Appellant, Joanne Reinhart, was injured on July 5, 1979, while riding her bicycle southbound on South Fort Harrison Avenue in Clearwater, over a railroad crossing owned by appellee Seaboard Coast Line Railroad and maintained by appellee Department of Transportation (DOT). The design of the crossing, which intersected the roadway at a 20° angle, was approved by appellee DOT. While attempting to traverse the crossing the front wheel of appellant's bike allegedly caught in the flangeway between the track and the pavement, thus causing the bike to come to a sudden *43 stop, and resulting in her being seriously injured when thrown from her bike.
Appellant sued the Railroad and DOT. She alleged that the Railroad was negligent in maintaining a track which crossed the road at an acute angle with flangeways running parallel to each rail of the track thereby creating a hazardous condition for bicycle riders. She further alleged that both the Railroad and DOT had actual notice of the defect because of numerous accidents at the crossing involving two-wheeled vehicles, but did nothing either to remedy the situation or to warn the public by posting appropriate warning signs. DOT admitted that it was responsible for maintenance and safety of the highway. The Railroad admitted that it had contractually agreed with DOT to maintain the crossing in a condition safe for the general public. Appellees denied that any defect existed and alleged that appellant was negligent.
At trial appellant described her accident to the jury. Then James Douglas, an eyewitness to the accident, explained how the front wheel of appellant's bicycle became "trapped in the groove of the track." There was further testimony concerning the accident by Barbara Thermos who had seen appellant fall but could not attribute the accident to the flangeway. Photos of the crossing showing the track and flangeways were also submitted in evidence. Appellant further proffered an expert witness; however, the court ruled he was not qualified to testify on the issue of the alleged defective crossing.
Numerous witnesses were proffered by appellant to testify concerning a history of accidents at the crossing to prove appellees had notice of the dangerous crossing. Several were excluded because of the remoteness of events. However, Patricia Ellis, who owned a business across the street from where the accident occurred, was permitted to testify that over the past five years she had personally observed twenty accidents of a similar nature. She called the police about the problem and on at least one occasion reported a similar accident to the DOT, but never notified the Railroad. Jean Brady, who lived across the street from the crossing, testified that she had witnessed fifteen similar accidents in the last five years. She reported at least one of these accidents to the City of Clearwater, but not to DOT or the Railroad. She tended to blame these prior accidents on a worn portion of the road rather than on the flangeway. All of the prior accidents occurred at the same point where the track crossed the road at a 20° angle.
The claims agent for the Railroad testified that he received phone calls from two individuals reporting that they had fallen at the crossing while on two-wheeled vehicles. He went to the crossing but said he observed no defects. In response to certain requests for admissions, the Railroad admitted that one of the individuals was injured when the front wheel of his bike was caught in the flangeway, but the Railroad attributed this to the individual's negligence.
Also introduced into evidence was an interdepartmental memorandum from DOT recognizing the existence of a hazardous condition at the crossing for some years prior to the accident in the instant case. The memo noted that seventeen accidents involving two-wheeled vehicles had occurred at the crossing in a three-year period, and warned that "[t]his office deems the current situation as hazardous... ."
At the conclusion of appellant's evidence, the court directed a verdict for both appellees, observing there was "no proof that the acute angle or anything else specifically caused this accident. So you're relying on prior similar accidents is all." This appeal ensued with appellant arguing there was sufficient evidence before the trial court to withstand entry of a directed verdict.
Actionable negligence depends upon the existence of a duty of care by the defendant, failure to perform that duty, and an injury to the plaintiff proximately caused by such failure. Lake Parker Mall, Inc. v. Carson, 327 So.2d 121 (Fla. 2d DCA 1976). Here lay witnesses testified as to the condition of the crossing, and the photos of the accident scene were admitted into *44 evidence. Appellees argue that some expert testimony was necessary to prove the existence of a hazardous condition at the crossing. However, Florida courts have held that the question of whether expert testimony is essential in proving a particular issue is determined by the issue involved. Alton Box Board Co. v. Pantya, 236 So.2d 452 (Fla. 1st DCA 1970). While desirable, expert testimony was not essential here. The facts testified to were not of such a nature as to require any special knowledge or experience in order for the jury to form its conclusions. Rather, the disputed issue of whether the crossing was defective and, if so, whether such defect caused appellant's injury, was within the ordinary understanding of a jury. See Johnson v. State, 393 So.2d 1069 (Fla. 1980). We must reject appellant's contention that the court erred in not allowing the witness she proffered as an expert to testify. Suffice it to say that there is considerable discretion vested in the trial court in determining the qualification of an expert and absent an abuse of that discretion an appellate court will not interfere. Johnson v. State. We find no such abuse here.
Appellant also introduced evidence of prior accidents occurring under substantially similar conditions. This was admissible to show that a hazardous condition existed and that the Railroad and DOT had notice of this condition. Chambers v. Loftin, 67 So.2d 220 (Fla. 1953); Friddle v. Seaboard Coast Line Railroad, 306 So.2d 97 (Fla. 1974); Perret v. Seaboard Coast Line Railroad, 299 So.2d 590 (Fla. 1974).
In a motion for a directed verdict the evidence must be evaluated in the light most favorable to the plaintiff, and any reasonable doubt must be resolved in the plaintiff's favor. Professional Computer Management, Inc. v. Tampa Wholesale Liquor Co., 374 So.2d 626 (Fla. 2d DCA 1979). If any reasonable interpretation of the evidence supports the plaintiff's claim, the court must deny the defendant's motion. Charlotte Asphalt, Inc. v. Cape Cave Corp., 406 So.2d 1234 (Fla. 2d DCA 1981). We think this is particularly important in Florida where the doctrine of comparative negligence applies. Contrary to the trial court's conclusion that appellant was relying only on prior accidents, there was additional sufficient evidence from which a jury could determine that the crossing was hazardous and that appellees were negligent. Thus, we hold the court erred in directing a verdict for the appellees.
DOT admits that it is responsible for maintenance and safety of the highway and has performed active maintenance operations, yet it urges that under Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979) and Payne v. Palm Beach County, 395 So.2d 1267 (Fla. 4th DCA 1981), it is immune from liability for failure to warn of the dangerous condition of the crossing. It argues here, as it unsuccessfully did before the trial court on its motion for summary judgment, that its decision not to place extra warning signs at the crossing or to remedy the hazardous situation was "planning" and not "operational" decision making. We disagree with DOT's position.
Decisions to build a road or a crossing with a particular alignment, as well as the failure to upgrade an existing road or intersection, are generally considered judgmental, planning-level functions, and absolute immunity attaches. However, once DOT became aware of the dangerous condition of the crossing, a duty at the operational level arose to warn the public of, or protect the public from, the known danger. Appellant's complaint alleged a known dangerous condition for which there was no proper warning, and there was evidence from which a jury could have concluded that DOT was negligent in failing to erect warning signs. Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982). See also Department of Transportation v. Webb, 409 So.2d 1061 (Fla. 1st DCA 1981). Therefore, we reject DOT's argument that it is immune from liability.
*45 Finally, appellant contends the trial court erred in excluding evidence of remedial measures taken by appellees after the accident whereby a rubber filling was placed in the flangeway. We find no error in this ruling because in Florida repairs after an injury are not admissible in evidence. § 90.407, Fla. Stat. (1981); Department of Transportation v. Webb. Otherwise, in instances such as this, the parties charged with negligence would be deterred from correcting any defective conditions.
Accordingly, we reverse and remand for a new trial.
OTT, C.J., and SCHOONOVER, J., concur.