530 So.2d 318 (1988)
Roy ZWINGE, Appellant,
v.
Kevin J. HETTINGER, Carrie Ann Carta, State Farm Mutual Automobile Insurance Company, Andessa L. Davis, Appellees.
No. 87-1648.
District Court of Appeal of Florida, Second District.
July 1, 1988.
Rehearing Denied August 29, 1988.
Philip Burlington, of Edna L. Coruso, P.A., West Palm Beach, and Charles H. McQuillan, P.A., Tampa, for appellant.
Bruce D. Austin, of Kaleel and Kaleel, P.A., St. Petersburg, for appellees.
*319 PARKER, Judge.
Zwinge appeals from the trial court's judgment entered for the appellees, defendants below, following the granting of a directed verdict in their favor. We reverse.
Zwinge suffered injuries as a result of an automobile accident which occurred on interstate highway 275 (I-275) in Pinellas County at approximately 2:00 a.m. on June 26, 1982. Zwinge filed a complaint, which named the appellees as defendants, in an effort to recover for his injuries. The case proceeded to trial during which the following evidence was established.
Zwinge's accident was preceded by another collision involving appellee, Kevin J. Hettinger. Hettinger, driving a Toyota owned by appellee, Carrie Ann Carta, was proceeding northbound on I-275, which was composed of three northbound and three southbound lanes divided by a median. Hettinger was traveling in the left-hand lane when he was observed by a witness, Mary Morton, weaving in the lane. Morton also observed as the Toyota driven by Hettinger twice struck the concrete wall located on the left-hand side of the road, then collided with a Cadillac that had been parked on the left-hand shoulder. The impact from that collision propelled the Cadillac across the three northbound lanes, striking a guardrail located on the opposite side. When the Cadillac finally stopped, part of the vehicle was obstructing the right-hand lane of traffic and none of the Cadillac's lights were on. The Toyota came to a stop on the left-hand shoulder of the highway, in turn, blocking the left-hand lane. As a result, the northbound traffic was restricted to the middle lane, which was the only open lane at the time. At the trial of this case, Morton testified that immediately before the location of the first accident, there was a slight hill and curve on the highway creating a blind spot for oncoming drivers, who could not see the accident scene until they were almost upon it.
After observing the initial collision, Morton stopped on the right-hand shoulder and activated her automobile's emergency flashers. She exited the car and ran across the highway to where the Toyota was stopped. Hettinger had already exited the Toyota. According to Morton, she, her husband, and another man attempted to keep Hettinger calm, but found it difficult due to Hettinger's inebriated condition. There was also evidence in the record that one of the men who had stopped at the accident scene began throwing cans and bottles from inside the Toyota into the median.
Sean Schoen testified that he was driving southbound on I-275 after the first collision when he saw the cars stopped on the northbound side of the road. Noticing that there were no police on the scene he stopped to render assistance. Schoen stated at trial that anyone traveling northbound on I-275 at the maximum allowable speed limit would have struck the two automobiles, the Toyota and Cadillac, which were obstructing the road.
Once Schoen observed that there were no lights on that section of I-275, he attempted to warn the northbound traffic of the hazard by waving a white towel. Some of the vehicles, including the car driven by Zwinge, slowed down in response to Schoen's warning, but the automobile driven by Wayne Shattuck did not. As Zwinge proceeded to slow down, Shattuck's car approached on the right-hand side of the middle lane and struck the back end of Zwinge's car "with a real good whack." Zwinge had been in the process of pulling off the roadway to offer aid, but at the moment of impact with Shattuck's car, Zwinge was still in the right-hand through lane about seventy-five feet north of the abandoned Cadillac and the Toyota driven by Hettinger. The impact from this collision drove Zwinge's car into Jerry Guidice's automobile which was parked on the right-hand shoulder of the highway. Zwinge's car ricocheted off Guidice's car and into the guardrail. Guidice had noticed Schoen flagging the traffic and had stopped on the side of the road to assist. There was testimony placing the second collision between three and ten minutes of the first one.
At trial, Guidice stated that he observed Zwinge's car being driven through the accident *320 scene slowly, then Shattuck's car as it traveled down the highway until it hit Zwinge's car in the rear, pushing Zwinge's vehicle into Guidice's car. Zwinge was found unconscious in his vehicle following the accident. Zwinge testified that he was proceeding northbound on I-275 when he saw vehicles stopped on either side of the road. He noticed the Cadillac which was partially obstructing the right-hand lane. While he did not witness the initial collision, Zwinge assumed there had been an accident because of the manner in which the cars were positioned on the roadway. Zwinge decided to stop to offer aid since no flares had been placed on the roadway to caution oncoming traffic and he had some flares in the trunk of his car. Zwinge testified: "I pulled up around the Cadillac, and as I did, I turned my flashers on and I was pulling off the road, when I looked in my mirror and I seen headlights heading for me, and I got hit by another car."
Shattuck's testimony revealed that he had been drinking on the night of the accident, and further that as a result of the accident he had amnesia and could not remember certain details about the incident. Shattuck stated, however, that he was familiar with I-275 and the area of the highway involved in the collision and that he believed he was driving within the maximum allowable speed limit. Shattuck maintained he did not have any time to brake and did not recall seeing Zwinge's vehicle prior to the accident.
G.E. Triplett, a highway patrolman, testified regarding his investigation of the collision involving Shattuck and Zwinge. When Triplett arrived at the scene, Schoen was flagging people down directing them to the center lane of traffic. Triplett noticed numerous hazards present at the accident scene including the location of the Cadillac and Toyota. There were many vehicles parked on both sides of the roadway by persons who had stopped to help. Triplett also noted the dangerous condition occasioned by the curve and hill that created a blind area for oncoming traffic. Visibility was so poor at the location of the accidents that some northbound vehicles almost hit Triplett's patrol car even though he had activated the car's overhead lights. In order to alert the approaching traffic of the perilous situation, Triplett distributed flares to persons who had stopped to assist to be placed along the roadway.
According to Triplett, Shattuck's vehicle collided with the car driven by Zwinge approximately fifty to one hundred feet north of where the Cadillac was stationed. Zwinge's car was totaled and Zwinge was taken from the scene in an ambulance. Triplett stated that due to the gasoline and debris which was present on the roadway, the highway was eventually closed until the fire department arrived. After Triplett concluded his investigation of the accidents, he found there was no improper driving on the part of Zwinge. However, Triplett cited Shattuck and Hettinger for careless driving and each pled guilty to the charge.
During the trial, the court excluded the opinion testimony of several witnesses regarding the causal relationship between Hettinger's collision with the Cadillac and the subsequent collision between Shattuck and Zwinge. Zwinge proffered the testimony of Triplett who stated that the Hettinger collision was a contributing factor to the second accident, because it created an obstruction on the highway at a point where it was not visible to oncoming drivers. Before the proffer, Triplett had testified that he had been investigating automobile accidents for thirteen years and had received extensive specialized training in that area.
The testimonies of three eyewitnesses to the accidents, Morton, Schoen, and Guidice, were also proffered on the issue of causation between the first and second collision. Morton, the only one of the three who witnessed both collisions, testified that the second collision would not have occurred but for the first. Schoen and Guidice, who were present and observed the second accident, stated that based on their observations of the scene, Zwinge's car wreck was causally related to Hettinger's collision with the Cadillac. The above opinion evidence was objected to by the appellees, *321 with the objection being sustained and the evidence excluded.
At the close of Zwinge's case, counsel for appellees moved for a directed verdict claiming that there was insufficient evidence linking the Hettinger collision with the Zwinge collision to justify the case being submitted to the jury. Appellees maintained that, as a matter of law, Shattuck's negligence was an intervening cause which broke the chain of causation, thereby superseding any negligence on the part of Hettinger as the proximate cause of Zwinge's injuries. The trial court granted a directed verdict in favor of appellees, stating that he could not bring the two incidents "close enough together in time or in causation" to allow the case to go to the jury. The trial court then entered final judgment for the appellees. Zwinge responded with a motion for new trial, which the court also denied. This appeal stems from the denial of that motion.
In this appeal, Zwinge challenges the trial court's action in granting a directed verdict for the appellees, alleging error on that basis. Initially, we observe that in considering a motion for directed verdict, the trial court must review the evidence in the light most favorable to the nonmoving party, with any reasonable doubt and inference being resolved in that party's favor. Reinhart v. Seaboard Coastline R.R. Co., 422 So.2d 41 (Fla. 2d DCA 1982), review denied, 431 So.2d 988 (Fla. 1983).
In the present case, the trial court directed the verdict finding that Zwinge failed to prove the element of causation, i.e., proximate causation, during the presentation of his case in chief. Zwinge attacks that finding relying upon the supreme court's holding in Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980). The appellees instead cite Dep't of Transp. v. Anglin, 502 So.2d 896 (Fla. 1987) in support of the trial court's decision. We agree with Zwinge that the present case is more closely aligned with Gibson.
One of the defendants in Gibson, Frank Arata, had stopped his vehicle for no apparent reason on an inner lane of the interstate highway. A second automobile stopped behind Arata, and the driver of that automobile exited his car and began directing traffic around both stationed vehicles. The plaintiff also stopped his car a few feet from the location of the second car, but was subsequently struck from behind by a fourth vehicle driven by codefendant McNealy. At trial, the presiding judge granted a directed verdict in favor of Arata on the theory that McNealy's negligence constituted an efficient, intervening cause insulating Arata and the company that owned the car Arata was driving from any liability for the plaintiff's injuries. The third district affirmed stating:
Though the nighttime conditions were not ideal for visibility, it is apparent that had McNealy been driving cautiously, maintaining the proper distance between his vehicle and appellant's vehicle and watching the road ahead, no accident would have occurred. McNealy had more than enough time to avoid an accident (as other automobiles had done) by changing lanes and his negligence on the road amounted to an efficient intervening cause relieving appellees of liability.
Gibson v. Avis Rent-A-Car System, Inc., 362 So.2d 960, 961 (Fla. 3d DCA 1978).
The Florida Supreme Court quashed the decision of the third district concluding that the trial court erred when it determined, as a matter of law, that McNealy's negligence was an intervening cause which relieved Arata of liability. In so ruling, the supreme court stated:
[O]ne who is negligent is not absolved of liability when his conduct "sets in motion" a chain of events resulting in injury to the plaintiff. Sardell v. Malanio, 202 So.2d 746, 747 (Fla. 1967); Loftin v. McCrainie, 47 So.2d 298, 302 (Fla. 1950).
While the holding of the courts below that McNealy's conduct was the sole cause may be seen as correct from the standpoint of physical causation, the question of whether to absolve a negligent actor of liability is more a question of responsibility. (Citations omitted). If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening *322 cause is foreseeable is for the trier of fact. (Citations omitted).
Gibson, 386 So.2d at 522. The supreme court further declared that "a reasonable person would have to conclude that stopping a car in the middle of an interstate where the speed limit was fifty-five miles an hour, created a risk that other cars might collide as a result of trying to avoid hitting the stopped vehicle." Id. at 523. Therefore, the court concluded that it could not be said that, as a matter of law, McNealy's conduct was an intervening cause sufficient to insulate Arata from liability. The court also noted numerous cases in which it had held that a jury could find more than one driver responsible in a multiple car accident. Id. The case was then remanded for a new trial to be conducted so that a jury could resolve the causation issue.
The facts of Anglin, on the other hand, reveal that as the Anglins were crossing a Seaboard Coastline Railroad track in their truck, they drove through a six-inch deep puddle of water, which resulted in their truck's engine sputtering and dying. The Anglins pushed the vehicle toward the side of the road, but were unable to restart it. They then pushed the vehicle back onto the roadway and attempted to push-start it. After pushing the vehicle approximately a hundred yards, the Anglins could not successfully start the engine. At that point, about fifteen minutes after the engine had died, a truck driven by Edward DuBose passed the Anglins headed in the opposite direction. DuBose traveled a short distance beyond where the Anglins were stranded, slammed on his brakes, spun around and headed back to the Anglins' vehicle in order to offer assistance. DuBose then accelerated to a speed of approximately forty miles per hour, failed to stop and crashed into the back of the Anglins' truck, causing serious injury to Mrs. Anglin.
The Anglins sued Seaboard Railroad and the State of Florida Department of Transportation alleging negligence in the design of the railroad tracks and roadway in such a way as to allow water to accumulate in an unsafe manner. The trial court granted the defendants' motion for summary judgment reasoning that DuBose's conduct in losing control of his vehicle was an independent, efficient intervening cause that broke the chain of causation between the defendants' alleged negligence and the plaintiff's injury. The district court reversed, relying on Gibson, after concluding that it could not be stated, as a matter of law, that the injury to the Anglins was not within the scope of danger created by the defendants' negligence in the design of the roadway. Anglin v. Dep't of Transp., 472 So.2d 784 (Fla. 1st DCA 1985).
The Florida Supreme Court quashed the first district's decision, determining that the trial court was correct in finding the actions of DuBose constituted an intervening cause of the Anglins' injuries as a matter of law. In so ruling, the court concluded that the actions of DuBose in recklessly rushing to the aid of the Anglins and losing control of his vehicle "were so far beyond the realm of foreseeability that, as a matter of law and policy, the [defendants] cannot be held liable for the [plaintiffs] injuries." Anglin, 502 So.2d at 899.
We find the application of the facts in this case appears much closer to the situation in Gibson than that present in Anglin. Here, Hettinger's driving and ultimate collision with the Cadillac created a hazard on an interstate highway that resulted in the blocking of two outside lanes of the three northbound lanes of I-275. This area of the road was dark and included a blind spot for oncoming drivers. The Cadillac positioned in the right lane had no visible lights. The dangerous condition created by Hettinger precipitated the occupants of passing vehicles to stop and lend assistance by standing in front of the damaged vehicles and flagging oncoming motorists to warn them of the potential peril. As a consequence, traffic began to slow down, including Zwinge who decided to stop and render aid.
The situation depicted above appears much different from Anglin, where DuBose obviously had viewed the Anglins' vehicle, its location and condition and nonetheless *323 recklessly drove directly toward and eventually into the Anglins' truck. It was not foreseeable that DuBose's conduct in losing control of his vehicle, when he knew precisely where the Anglin vehicle was located, was the proximate cause of the negligent design of a roadway and railroad tracks that allowed water to accumulate and thereby disable the Anglins' vehicle.
We further observe that Zwinge pled the rescue doctrine in his complaint, specifically alleging:
That as a direct and proximate result of the negligence of the defendant, Kevin J. Hettinger, in the operation of the aforesaid vehicle, the plaintiff, Roy Zwinge, slowed his vehicle in order to stop and render assistance at the accident scene and was rear-ended by another vehicle. That as a result of plaintiff's attempted stop in order to render aid, plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement... . (Emphasis supplied).
A basic precept of the rescue doctrine is that where the defendant has created a situation of peril for another, the defendant will be held in law to have caused the peril not only to the victim but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in his rescue attempt. Ryder Truck Rental, Inc. v. Korte, 357 So.2d 228 (Fla. 4th DCA 1978). It is undisputed that Zwinge was stopping to render assistance at the time he was rear-ended. Zwinge's rescue attempt was occasioned by the imminent peril created to passing motorists by Hettinger's actions. Such a rescue effort cannot be said to have been so far beyond the realm of foreseeability as to preclude liability by the appellees for Zwinge's injuries as a matter of law. See Anglin, 502 So.2d at 899. Once the rescue doctrine was invoked as a basis for imposing liability on the appellees, a question of fact arose which had to be resolved by a jury as to whether Hettinger created a situation of danger rendering Zwinge's accident and Zwinge's consequent injuries, as the rescuer, a foreseeable result of that peril. Considering the evidence in the light most favorable to Zwinge, sufficient evidence was presented to submit this question to the jury for resolution. Reinhart, 422 So.2d at 41.
Lastly, because this matter is being remanded to the trial court for further proceedings, we must address the trial court's action in excluding certain opinion testimony. We determine the trial court was correct in disallowing the proffered testimony of three eyewitnesses to the accident scenes that the Hettinger collision caused the Shattuck/Zwinge accident. Section 90.701(1), Florida Statutes (1985)[1], permits such opinion testimony if the witness cannot otherwise readily communicate what he has perceived without offering his opinion, and the opinion does not require special expertise. Here, all three eyewitnesses were allowed by the trial court to testify regarding their individual observations, including their opinions concerning intoxication of the drivers involved, the speed and distances of the vehicles, and the existence of a hazard. The jury should have been permitted to draw its own inferences and conclusions based upon the above testimony; therefore, the trial court did not abuse its discretion in excluding the lay witnesses' opinion testimony on the ultimate issue of causation. See Carver v. Orange County, 444 So.2d 452 (Fla. 5th DCA 1983).
On the other hand, Trooper Triplett's testimony concerning the causation of the second accident by the first accident should have been admitted into evidence. Under section 90.703, Florida Statutes *324 (1985)[2], an expert witness is allowed to testify to an ultimate fact. A jury has the power to accept or reject the testimony of expert witnesses and are not bound by their conclusions. Ehrhardt, Florida Evidence § 703.1 (2d ed. 1984). Such opinion testimony from an expert is admissible only if the subject matter of the testimony is beyond the common understanding of the average person. Florida Power Corp. v. Barron, 481 So.2d 1309 (Fla. 2d DCA 1986). The totality of the road conditions which Triplett has observed, plus his many years of accident investigation would provide the jury with a knowledge beyond the common understanding of the average layman that would aid the trier of fact in arriving at a decision. Barron.
Accordingly, we reverse the judgment entered by the trial court in favor of the appellees pursuant to the granting of a directed verdict on their behalf, and remand this case for proceedings consistent with this opinion.
RYDER, A.C.J., and FRANK, J., concur.
NOTES
[1] Section 90.701, Florida Statutes (1985), provides in relevant part:

If a witness is not testifying as an expert, his testimony about what he perceived may be in the form of inference and opinion when:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
[2] Section 90.703, Florida Statutes (1985) states:

Opinion on ultimate issue.  Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.