637 So.2d 60 (1994)
Marvin SOMMERS and Marjorie Sommers, Appellants,
v.
SMITH AND BERMAN, P.A., Brian M. Berman, Esq., Chicago Title Insurance Company, Muriel Wilner, Henry A. Klar and Henry A. Klar Realty, Appellees.
No. 92-2809.
District Court of Appeal of Florida, Fourth District.
May 18, 1994.
Suzan Jon Jacobs and Brian S. Behar of Levine & Geiger, P.A., Miami, for appellants.
Michael E. Marder and Leonard Lubart of Greenspoon, Marder, Hirschfeld & Rafkin, P.A., Fort Lauderdale, for appellee, Chicago Title Ins. Co.
KLEIN, Judge.
The issue presented in this case involves the liability of a title insurance company to the purchasers of real estate, for the negligence of the lawyer who handled the closing and issued the title policy. We conclude that because the title insurer only issued the title insurance policy, and did not close the transaction, *61 it is not liable for the conduct of the lawyer handling the closing.
The appellant buyers entered into a contract for the purchase of a residence which contained only the street address, not the legal description. They thought, because of representations made by the seller and the real estate broker, that one boundary of the lot was further from the house than it actually was. Buyers retained a lawyer to represent them on the purchase, and the lawyer issued a title insurance policy through appellee, Chicago Title. Prior to closing buyers obtained a survey which was also incorrect in regard to the one boundary which had been misrepresented to buyers. At closing buyers were conveyed the property described by the proper legal description, and they received a title insurance policy insuring the property identified by the proper legal description. There was no defect in the title of the property which they were conveyed and which was insured. When buyers discovered the lot as legally described was smaller than had been represented, they brought this suit.
Buyers sued the sellers and the real estate broker for misrepresentation, their lawyer for knowing about the misrepresentation, and Chicago Title on the ground that the lawyer was the agent of Chicago Title. The trial court held that the second amended complaint failed to state a cause of action against Chicago Title and dismissed it with prejudice. We affirm.
In attempting to state a cause of action against Chicago Title, buyers attached a copy of the title insurance policy to their complaint; however, the allegations of their complaint show that there was no breach of the policy. The policy insured the property conveyed to buyers at the closing, and there is no claim of defect in that title which would give rise to a claim under the policy. Rather, the complaint alleges that buyers' lawyer failed to advise buyers of the discrepancy between what buyers thought they were getting and what buyers were actually getting, that the lawyer "acted as the representative" for Chicago Title at the closing, and that the acts of the lawyer were "conducted within the course of the agency relationship" between the lawyer and Chicago Title.
If a title insurance company acts as a "closing agent," then the title insurance company has a duty to conduct the closing in a "reasonably prudent manner." Askew v. Allstate Title & Abstract Co., 603 So.2d 29 (Fla. 2d DCA 1992); Florida Southern Abstract & Title Co. v. Bjellos, 346 So.2d 635 (Fla. 2d DCA 1977).
We conclude that this complaint does not allege that Chicago Title was acting as the closing agent. Rather, it alleges that buyers' lawyer was acting as closing agent, and that by virtue of his agency to issue the title insurance policy, Chicago Title became liable for his negligence, notwithstanding there is no defect in the title to the property conveyed and insured by the policy. Buyers cite no authority to support the proposition that the title insurance company would be liable under these circumstances.
Chicago Title relies on two Texas cases which are on point. In Southwest Title Insurance Co. v. Northland Building Co., 552 S.W.2d 425, 428 (Tex. 1977), attorney Grynwald handled a real estate closing and, as an approved attorney for Southwest Title Insurance Company, issued a title insurance policy. He released funds without obtaining proper estoppel letters, resulting in a loss to the mortgagee which was not covered by the title insurance policy. The mortgagee was attempting to hold Southwest Title liable for the conduct of the lawyer on an agency basis, on the same theory advanced by buyers in the present case. In holding that there could be no recovery against the title insurance company on that theory the court stated:
The arguments in the case confuse the closing of a title insurance contract and the closing of the entire transaction between Northland and Dal-Rich which required the satisfaction of numerous conditions  including the acquisition of estoppel letters from Citizens State Bank. There is no evidence in this record that Southwest Title conducts any business other than the issuance of title insurance or that it authorized Grynwald or anyone to conduct and accept responsibility for the details and conditions of loan transactions.

*62 There is no evidence of apparent authority of Grynwald to do more. His possession of blank title policy forms could bear only upon the authority to issue the title policy. If his endorsement of the check made payable to Southwest Title, and his conducting the closing in response to Northland's letter addressed to Southwest Title, can be said to have given appearance of wider authority, none of this was known or traceable to Southwest Title. Only the conduct of the principal, leading one to suppose that the agent has the authority he purports to exercise, may charge the principal through the apparent authority of an agent. (Emphasis in original)
In Cameron County Savings Ass'n v. Stewart Title Guaranty Co., 819 S.W.2d 600 (Tex. Ct. App. 1991), a mortgagee was attempting to hold the title insurance company liable for fraud of an employee of the abstract company which was conducting the closing. The court observed that the fact that a closing agent such as a lawyer or title company might wear "two hats," in selling the title insurance and closing the sale, does not make the title insurance company liable for the mishandling of the real estate closing. See also, Glynn v. New Hampshire Insurance Company, 578 So.2d 36 (Fla. 4th DCA 1991) (an agent can be the agent of the insurance company for one purpose and the agent of the insured for other purposes).
Florida has a statute which authorizes a title insurer to undertake more responsibility in a closing besides issuing a title policy. Section 627.786(3), Florida Statutes (1987) authorizes the title insurance company to assume responsibility for losses arising out of a closing by "providing instruments to any prospective insured, in the form and content approved by the department [of insurance]." An approved form for such a document is found in rule 4-186.010 of the Florida Administrative Code (1993).[1] There are no factual allegations that Chicago Title was acting as a closing agent pursuant to that statute, nor any factual allegations that Chicago Title was otherwise acting as a closing agent.
In Phrazer Co., Inc. v. Lawyers Title Insurance Corporation, 508 So.2d 731 (Fla. 5th DCA 1987), the buyer sued the title insurance company, contending it was responsible for permitting the transaction to close without making sure that the buyer had direct access to a road. The trial court entered a summary judgment against the buyer because there was no breach of the title insurance policy as written. On appeal the buyer argued that the title insurance company breached its duty as closing agent, a theory which was not argued in the trial court, and the fifth district decided that the buyer should be given the opportunity to amend and allege that the title insurance company breached its duty as closing agent. In the present case the title insurance company moved to dismiss the first amended complaint on the ground that there was no allegation that it was a closing agent. Since buyers did not allege, in their second amended complaint, that the title insurance company was a closing agent, we see no reason for buyers to be given further opportunity to amend here.
Buyers also allege that Chicago Title breached section 627.7842, Florida Statutes (1987), which provides that if a survey is furnished to the title insurer, then the title policy may only except from coverage those encroachments, etc. which are actually shown on the survey. Buyers complain that the policy here contained the boilerplate exception for encroachments, etc. which "would be disclosed by an accurate survey." We need not decide whether the boilerplate exclusion was valid because it is irrelevant. The title to the property insured by the policy is not defective, and consequently the validity of the exclusion has no bearing on the merits of buyers' claim.
Affirmed.
DELL, C.J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] Formerly rule 4-21.011 of the Florida Administrative Code.