639 So.2d 661 (1994)
Eileen C. GEORGE and Larry George, her husband, Appellants,
v.
HITEK COMMUNITY CONTROL CORPORATION and State of Florida, Department of Corrections, Appellees.
No. 93-1557.
District Court of Appeal of Florida, Fourth District.
July 6, 1994.
*662 Frank Comparetto, Jr. of Law Offices of Frank Comparetto, Jr., Lakeland, for appellants.
Michelle K. Feinzig and Edward H. Zebersky of Tripp, Scott, Conklin & Smith, Fort Lauderdale, for appellee-State of Florida, Dept. of Corrections.
No brief filed for appellee-Hitek Community Control Corp.
STEVENSON, Judge.
Eileen and Larry George filed this negligence action against the Department of Corrections ("DOC") seeking damages for injuries suffered by Mrs. George when she was forcibly raped by Barry Dyson, an individual court ordered to participate in a community control program. Dyson was wearing an electronic monitoring device manufactured by Hitek Community Control Corporation. The device was designed to help authorities keep track of a person's whereabouts. Dyson was able to remove the electronic monitoring device, and after doing so, he entered appellants' residence and raped Mrs. George. The Georges allege that DOC (1) negligently selected the electronic monitoring device inasmuch as it could easily be removed by its wearers; (2) negligently promulgated regulations and procedures in connection with the community control program; and, (3) negligently failed to warn the public of the inadequacy of the electronic monitoring devices. In sum, the complaint alleges that if DOC "had utilized a reasonably safe device, it could not have been removed by Dyson and *663 the harm to ... [Mrs. George] ... would have been prevented." Finding that the DOC owed appellants no statutory or common law duty of care, the trial court entered final summary judgment for DOC[1]. We affirm.
In Trianon Park Condominium v. City of Hialeah, 468 So.2d 912 (Fla. 1985), the supreme court held that there can be no governmental tort liability analysis unless it is first determined that there is an underlying common law or statutory duty of care with respect to the alleged negligent conduct. In other words, only when a duty of care exists does the essential inquiry turn to the question of sovereign immunity and the four point operational/planning test developed in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440, 445 (1965) and adopted as the law of Florida in Commercial Carrier v. Indian River County, 371 So.2d 1010 (Fla. 1979).
According to the court's analysis in Trianon, enforcing the law and protecting the public safety are so-called category II activities which fall within the ambit of the government's discretionary police power and for which there is not now, and never has been, a common law duty of care. The court stated: "How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there has never been a common law duty of care." Id. at 919. It is worth mentioning here, however, that even when exercising an inherent police power function, there may be a common law duty under certain narrow circumstances. For example, a common law duty may arise where there is a special relationship between the governmental agency and the person injured. One such instance exists when a person is injured while in police custody or detention. See Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989) and cases cited therein. Appellants concede that there is no special relationship in this case.
The threshold issue we address is whether or not the governmental activity in question is a category II activity falling squarely within the police power of the state. We find beyond question that governmental responsibility to manage individuals under criminal sentence, whether custodial or non-custodial, flows from the state's inherent police powers to enforce its laws. Numerous authorities have found that the state was exercising its police power in analogous situations. See Trianon, 468 So.2d at 921 (enforcement of building code); Reddish v. Smith, 468 So.2d 929 (Fla. 1985) (classification of prisoners and determination of custodial or noncustodial status); Berry v. State, 400 So.2d 80 (Fla. 4th DCA 1981) review denied, 411 So.2d 380 (Fla. 1981) (determination to release prisoner on parole). In short, we believe that the management of Dyson's court ordered community control, the selection of a particular monitoring device and the determination of its suitability for use in connection with a community control program are activities uniquely within the inherent police power of the state and do not give rise to a common law duty of care.
Further, we find no specially created statutory duty of care. Trianon cautioned that statutes enacted under the police power do not create special statutory duties of care owed by the government to individual citizens unless there is a specific legislative intent to do so. Id. at 922. The court specifically rejected the notion that the legislature, in establishing a statutory duty on the part of governmental entities to enforce building codes, intended to give individual citizens a statutory right of recovery if an inspection were negligently performed. Instead, the court found that government building code inspection and enforcement requirements were intended to protect the public welfare at large. Id.
One example where the court found a specific legislative intent to create a duty of care is found in Department of Health & Rehab. Serv. v. Yamuni, 529 So.2d 258 (Fla. 1988). *664 There, a suit was brought alleging that HRS was negligent in failing to adequately investigate and detect a case of child abuse, resulting in further abuse and injury to the child. The court held that in enacting chapter 827, Florida Statutes (1979), the legislature intended to create a special statutory duty of care on the part of HRS to prevent further harm of children when abuse reports are received. Id. The court noted that chapter 827 "designates children as a protected class of persons" and that the "relationship established between HRS and the abused child is a very special one." Id. Thus, the court found not only a specific legislative intention to create a duty of care, but also the existence of a special relationship between HRS and its charges  the children under its care. Accord, Department of Health & Rehab. Serv. v. Whaley, 531 So.2d 723 (Fla. 4th DCA 1988), aff'd 574 So.2d 100 (Fla. 1991) (HRS may be liable for damages for sexual assault committed on juvenile by fellow detainee while in juvenile detention center).
We cannot agree that the legislature intended to create a special statutory duty of care to individual citizens by enactment of the community control statute. In 1983, the Florida legislature enacted the Correctional Reform Act which created the present community control program. 1983 Fla. Laws ch. 83-131. In passing this Act, the legislature made the following findings, among others:
(1) Prudent management of the growth of the state must include the reasonable containment of criminal justice expenditures.
(2) State government can no longer afford an uncritical and continuing escalation in capital outlay for prison construction at the expense of other competing social and economic priorities.
(3) The effectiveness of incarceration of offenders as a means to reduce the likelihood that they will return to criminal activities ... varies among individuals and types of offenders and is not conclusively positive.
(4) The increased use of noncustodial alternatives and non-prison custodial alternatives can alleviate prison overcrowding while still providing a sufficient measure of public safety and assuring an element of punishment.
* * * *
1983 Fla. Laws ch. 83-131. Given these legislative findings, we believe that community control programs were borne out of a frustration with the rehabilitative benefits of incarceration for some offenders and a desire to minimize the cost of criminal punishment while at the same time providing a sufficient measure of safety to the public at large. Unlike the statute in Yamuni, the community control statute in no way evinces a specific legislative intent to create a duty of care and impart a sphere of protection over certain individual citizens who may be injured by a releasee who manages to evade surveillance.
Accordingly, in finding that DOC owes no statutory or common law duty of care to appellants under the facts sub judice, we affirm the final summary judgment. We hasten to add that our conclusion is compelled by, and confined to, the nature of the specific allegations made in the instant complaint.
AFFIRMED.
ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] The George's complaint also sought recovery against Hitek Community Control Corporation, a private manufacturer, for strict liability and negligence based on allegations that the electronic monitoring device was defectively manufactured because it could be removed by the wearer. Hitek answered the complaint and remains a defendant in the George's lawsuit.