650 So.2d 658 (1995)
STATE of Florida, DEPARTMENT OF CORRECTIONS, Appellant,
v.
Randall Jerrold VANN, as Personal Representative of the Estate of Faye Lamb Vann, Deceased, Appellee.
No. 94-15.
District Court of Appeal of Florida, First District.
February 9, 1995.
Rehearing Denied March 17, 1995.
*659 R. Bruce McKibben, Jr. and Davisson F. Dunlap, Jr. of Pennington & Haben, P.A., Tallahassee, for appellant.
Edward M. Price, Jr. of Farmer, Price, Hornsby & Weatherford, Dothan, AL, for appellee.
WOLF, Judge.
The State of Florida, Department of Corrections (department) appeals from a final judgment assessing damages. While a number of issues are raised by appellant, the dispositive issues is whether the State of Florida, Department of Corrections, may be held liable as a result of criminal acts of an escaped prisoner. We find that no common law duty existed between the department and the decedent and, therefore, it is unnecessary for us to reach the issue of whether all of the department's alleged actions constituted planning level functions or category II law enforcement activities as identified in the Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla. 1985), decision. We therefore reverse, but certify the question as being one of great public importance.
On June 24, 1990, Faye Lamb Vann was murdered as she sat in her automobile parked outside the Gayfer's department store at the Tallahassee Mall in Tallahassee, Florida. Her assailant was Donald David Dillbeck, an escaped convict who had served 12 years of a life sentence (with 25-year mandatory) on a conviction of first-degree murder.
Dillbeck had been incarcerated at the Quincy Vocational Center (QVC) in Gadsden County, Florida. QVC is a "close" facility, meaning that it has a security classification allowing it to house inmates from any of the three security grades, from close (the highest) to minimum. The prisoner escaped while away from the prison grounds as part of a work detail providing catering services to a community group at the nearby Gretna Elementary School.
Subsequent to the escape, Dillbeck apparently made his way east to Tallahassee, where he purchased a knife and attacked Ms. Vann as she sat in her car in bright sunlight only a few feet from the entrance to the mall. Dillbeck was apprehended almost immediately by the Tallahassee Police Department.
The plaintiff/appellee is the personal representative of the estate of the murdered woman. Appellee alleged negligence on the part of the department by improperly classifying the prisoner (including the failure to follow their own rules and procedures in the method of classification), by failing to properly supervise the prisoner, and by failing to warn the public of the prisoner's escape. The department raised a number of defenses, including sovereign immunity. A trial date of October 25, 1993, was set by the court; however, on September 24, 1993, the parties *660 entered into a stipulation, agreeing in part as follows:
That the record would consist of certain enumerated documents, deposition transcripts and exhibits;
That the plaintiff would rescind its demand for a trial by jury, instead agreeing that the court could determine the matter based on the evidence in the stipulated record;
That damages if negligence was found to exist were established at $150,000.
Pursuant to the stipulation, the trial court (on the basis of the record presented to the court and agreed to by the parties) entered its final judgment on December 14, 1993, in favor of the plaintiff, awarding the stipulated amount of damages.
In determining the liability of a governmental entity for negligence, the court must look at two separate and distinct issues: (1) Whether there exists a common law or statutory duty of care which inures to the benefit of the plaintiffs as a result of the alleged negligence, and (2) whether the alleged action is one for which sovereign immunity has been waived. Trianon Park, supra. In Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989), the supreme court stated as to governmental liability "that a court must find no liability as a matter of law if either (a) no duty of care existed or (b) the doctrine of governmental immunity bars the claim." Id. at 734 (emphasis added).
The following basic principles are to be utilized in determining whether governmental tort liability exists:
First, for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct. For certain basic judgmental or discretionary governmental functions, there has never been an applicable duty of care. Commercial Carrier [v. Indian River County] [371 So.2d 1010 (Fla. 1979)]. Further, legislative enactments for the benefit of the general public do not automatically create an independent duty to either individual citizens or a specific class of citizens. Restatement (Second) of Torts § 288 comment b (1964).
Second, it is important to recognize that the enactment of the statute waiving sovereign immunity did not establish any new duty of care for governmental entities. The statute's sole purpose was to waive that immunity which prevented recovery for breaches of existing common law duties of care... .
Third, there is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons. See Restatement (Second) of Torts § 315 (1964).
Fourth, under the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights. See Commercial Carrier; Askew v. Schuster, 331 So.2d 297 (Fla. 1976); art. II, § 3, Fla. Const. Judicial intervention through private tort suits . .. would violate the separation of powers doctrine.
Fifth, certain discretionary functions of government are inherent in the act of governing and are immune from suit. Commercial Carrier. It is "the nature of the conduct, rather than the status of the actor," that determines whether the function is the type of discretionary function which is, by its nature, immune from tort liability. Varig Airlines [United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).]
Trianon Park, supra at 917-918.
A governmental duty to protect its citizens is a general duty to the public as a whole, and where there is only a general duty to protect the public, there is no duty of care to an individual citizen which may result in liability. Everton v. Willard, 468 So.2d 936, 938 (Fla. 1985).
In Trianon Park Condominium Park Ass'n v. City of Hialeah, 468 So.2d 912 *661 (Fla. 1985), the supreme court rejected the theory that if a governmental entity has a duty to the general public to perform a particular function, that this duty entitles an individual plaintiff to institute litigation for failure of the government to properly execute that duty.
Dykes v. City of Apalachicola, 645 So.2d 50 (Fla. 1st DCA 1994).
In a number of cases, the courts of this state have determined that the state is not liable for injuries resulting from the criminal acts of escapees. This principle is clearly stated by the Florida Supreme Court in Department of Health and Rehabilitative Servs. v. Whaley, 574 So.2d 100 (Fla. 1991). Addressing a case where the Department of Corrections was sued for negligence, the Whaley court held that "the Department of Corrections has no specific duty to protect individual members of the public from escaped inmates." Id. n. 1 at 102-103 (citing Reddish v. Smith, 468 So.2d 929 (Fla. 1985)).
In Parker v. Murphy, 510 So.2d 990 (Fla. 1st DCA 1987), this court dealt with an escaped prisoner case. An inmate working outside the prison escaped and attacked the Parkers, an elderly couple. The inmate was recaptured, but then he escaped again, attacking the Parkers yet again! The Parkers sued on the grounds that the department had breached its duty to them in failing to have the prisoner shackled, failing to have doors secured, and allowing the prisoner access to unsecured areas. The court, citing Everton v. Willard, held that even where the citizens had been previously attacked by the same escapee, the government owed no duty to those individuals to prevent the escape.
Most recently, in George v. Hitek Community Control Corp., 639 So.2d 661 (Fla. 4th DCA 1994), the fourth district found that no duty existed in a case where it was alleged that the Community Control Corporation negligently supervised a community controlee who forcibly raped a woman. A situation analogous to the instant action arose in Bradford v. Metropolitan Dade County, 522 So.2d 96 (Fla. 3d DCA 1988), wherein plaintiff was the victim of an attack by an escaped mentally disturbed woman who had been in a residential boarding house operated by the Mental Health Administrator's Program (MHAP). The third district court, citing Trianon Park and Everton, held that "the police owe a general duty to protect the public as a whole; any duty owed by MHAP would be for the benefit of the mentally disturbed persons which the agency is assigned to monitor." Just as MHAP had no duty of care to the plaintiff in that case, the Department of Corrections owes no duty of care to Ms. Vann (a member of the general public) in the instant action.
Appellee argues that this court's decision in Parker v. Murphy, supra, is no longer valid in light of the supreme court decisions in Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989), and Department of Health and Rehabilitative Servs. v. Yumani, 529 So.2d 258 (Fla. 1988), as well as our decision in Dunagan v. Seely, 533 So.2d 867 (Fla. 1st DCA 1988). The Kaisner and Dunagan decisions involve injuries to people who were in the custody and control of law enforcement officers. The determination of an enforceable duty to the individual was based on this custodial relationship:
In this case, we find that the petitioner was owed a duty of care by police officers when he was directed to stop and thus was deprived of his normal opportunity for protection. Under our case law, our courts have found liability or entertained suits after law enforcement officers took persons into custody, otherwise detained them, deprived them of liberty or placed them in danger... . So long as petitioner was placed in some sort of "custody" or detention, he is owed a common law duty of care.
Kaisner, supra at 734. Similarly, Dunagan involved injuries to a person in the custodial care of law enforcement.[1]
*662 Department of Health and Rehabilitative Servs. v. Yumani, supra, involved a situation where the court found a specific legislative intent to create a duty of care on the part of HRS to prevent further harm when abuse reports are received. The fourth district stated in analyzing Yumani that
[t]he court noted that chapter 827 "designates children as a protected class of persons" and that the "relationship established between HRS and the abused child is a very special one." Thus, the court found not only a specific legislative intention to create a duty of care, but also the existence of a special relationship between HRS and its charges  the children under its care.
George, supra at 664.
In addition, we find nothing in the supreme court's opinion in City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla. 1992), which would abrogate the consistent holdings of the Florida courts that there is no common law or statutory duty to any individual to protect them from crimes committed by an escapee. In the Pinellas Park case, liability was based upon the negligent manner in which the police conducted a high-speed chase, and the court specifically found that a common law duty existed to other people who were driving vehicles on the public thoroughfare. City of Pinellas Park, supra at 1225. In the instant case, the only duty which existed was a general duty owed to the public not to allow a prisoner to escape. Under these circumstances, the judgment in favor of the plaintiffs must be reversed. We do, however, certify the following question to be of great public importance:
WHETHER THE STATE OF FLORIDA, DEPARTMENT OF CORRECTIONS, MAY BE HELD LIABLE AS A RESULT OF THE CRIMINAL ACTS OF AN ESCAPED PRISONER?
WEBSTER and MICKLE, JJ., concur.
NOTES
[1] Dunagan also discusses whether the failure to follow departmental rules in classifying and supervising prisoners is a planning or operational function, an issue which we do not need to address. As noted in Reddish v. Smith, 468 So.2d 929 (Fla. 1985), even if it was determined that the decisions of the department were operational in nature, there would still be no liability as no common law action existed under these circumstances.