**Henry W. KREHLING, Jr., Plaintiff,**

v.

**Eli BARON, et al., Defendants.**

**No. 93–347–CIV–FTM–17.**

United States District Court,
M.D. Florida,
Fort Myers Division.

Sept. 27, 1995.

W. Donald Cox, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, Allen I. Saeks, Michael J. Wurzer, Patrick M. O'Brien, Leonard, Street & Deinard, P.A., Minneapolis, MN, for Henry W. Krehling, Jr.

Mark V. Silverio, Cynthia Byrne Halle, Law Offices of Mark V. Silverio, Miami, FL, for Eli Baron, Barclay Building Corporation, Deauville Lake Development Corp., Montclair Building Corporation, Chatham Square Development Corporation, Elba Development Corporation.

Bruce McLaren Stanley, Henderson, Franklin, Starnes & Holt, P.A., Ft. Myers, FL, John N. Brugger, Jr., Forsyth, Brugger, Reina & Bourgeau, P.A.

Michael S. Pasano, Zuckerman, Spaeder, Taylor & Evans, Miami, FL, Melissa Hammersley Clark, Zuckerman, Spaeder, Taylor & Evans, Tampa, FL, for John F. Forsyth.

Dwight A. Whigham, Winesett, Avery, Dupree & Whigham, P.A., Ft. Myers, FL, for attorney's Title Insurance Fund, Inc.

Mark A. Brown, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, for Commonwealth Land Title Insurance Company.

### ORDER ON DEFENDANTS' MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause comes before the Court on the following motions and other filings:

1. Defendant Commonwealth Land Title ("Commonwealth"), Motion to Dismiss First Amended Complaint and Memorandum of Law in Support (Doc. Nos. 103–104, filed April 7, 1995) and response (Doc. No. 116, filed April 25, 1995).

2. Defendant Attorney's Title Insurance Fund, Inc. ("Fund"), Motion to Dismiss and Memorandum of Law in Support (Doc. Nos. 97–98, filed April 6, 1995) and response (Doc. No. 116, filed April 25, 1995).

3. Defendant Fund's Motion to Strike Portions of Krehling Response to Fund Motion to Dismiss and Memorandum of Law in Support (Doc. No. 124, filed May 4, 1995).

4. Defendant Commonwealth's Motion to Strike Portions of Response to Commonwealth's Motion to Dismiss and Memorandum of Law in Support (Doc. No. 126, filed May 5, 1995).

### I.  Procedural History

This case was initially commenced by the Complaint filed on December 8, 1993. Approximately two years later, Plaintiff filed his First Amended Complaint (Doc. No. 81) on February 22, 1995. The First Amended Complaint alleges violations of § 1962 of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), breach of contract, fraud, negligent misrepresentation and breach of fiduciary duty against various defendants, and further joins Defendants Commonwealth and Fund as defendants under a state law negligence theory. Plaintiff asserts that this Court has jurisdiction over Defendants Commonwealth and Fund pursuant to 28 U.S.C. § 1367 and principles of "pendent jurisdiction". In using the term "pendent jurisdiction," Plaintiff refers to the concept of supplemental jurisdiction, which is provided for in 28 U.S.C. § 1367.

### II.  Facts

The facts as alleged in the First Amended Complaint follow. Plaintiff alleges that he was defrauded out of over $2,400,000.00 which he advanced both to clear title on property to be developed by various Defendant development companies in Naples, Florida, and for working capital for said developments. Defendant Baron is alleged to be President of the various development companies. Defendant Brugger, an attorney, allegedly represented both Plaintiff and Defendant Baron in the investment deals. Defendant Brugger also acted as agent for the defendant title insurance companies in issu-

ing title insurance policies on the individual units sold in the various developments.

Plaintiff alleges that on or about April 3 and 8, 1991, Plaintiff loaned Defendant Barclay Building Corporation ("Barclay") $1,000,000.00 as reflected in two $500,000.00 promissory notes drafted by Defendant Brugger. This money was used to pay off a mortgage held on land being developed for the Royal Wood project by Barclay. After payment, the bank assigned the mortgage that it held on the Royal Wood project back to Barclay, who in turn assigned the mortgage to Plaintiff on June 23, 1991. The Assignment of Mortgage from Barclay to Plaintiff was recorded on July 2, 1991 by Defendant Brugger on behalf of the Plaintiff.

After one payment of $50,000, the notes were consolidated into one $950,000.00 note requiring payments of $50,000.00 and quarterly interest payments of 18% per annum which was personally guaranteed by Defendant Baron. Two timely payments of $50,-000.00 were made in August and September of 1991 respectively. Then Plaintiff alleges that Defendants Baron and Brugger induced him to issue new unrecorded "Mortgage Notes" and "Mortgages" which Defendants represented would fully secure payment of the principal and interest due under the Mortgage Notes because the documents required that Plaintiff be paid the proceeds from the sale of the Royal Wood mortgaged units before such sales could be closed.

Defendants Baron and Brugger allegedly maintained that there was a need to keep the new notes and mortgages unrecorded to avoid the violation of various covenants of other loans Defendant Baron had received from various financial institutions. Plaintiff, relying on the representations of Defendants Baron and Brugger that recording the new mortgages was unnecessary, released the recorded Assignment of Mortgage and did not insist that Defendant Brugger record the new mortgages.

Subsequent to the substitution of the new mortgages, closings on the sale of units in the Royal Woods development began, however, Plaintiff never received the proceeds from the vast majority of the sales contrary to the representations of Defendants Baron and Brugger. In addition, from June 1991 through February 1992 Defendant Baron induced Plaintiff into providing working capital for various real estate developments by representing that Plaintiff would get a return of at least 20% to 50% and that his investment would be fully secured by mortgages on the various units of which he was financing the construction. In reliance on these representations, Plaintiff provided working capital for the construction of units in various developments. Plaintiff's advances to Defendant Baron and the corporate Defendants were again documented by Mortgage Notes and Mortgages prepared by Defendant Brugger. Defendant Baron and Brugger again represented that Plaintiff's investments were fully secured and that repayment would be forthcoming upon the sale of units in the various developments. Although requests for further advances were usually coupled with repayment of some of the previous Mortgage Notes, the majority of the money owed remained outstanding despite the continued sale of units. Plaintiff brings this action principally for fraud under 18 U.S.C. §§ 1962(a)–(d) of RICO with jurisdiction based on 18 U.S.C. § 1964(a).

Defendant Brugger prepared clean title insurance policies for the third-party purchasers of units in the various developments on behalf of Defendants Fund and Commonwealth. Plaintiff maintains these policies were fraudulent in that Defendant Brugger was aware of the various unrecorded mortgages on the units, yet issued clean policies which made no mention of said mortgages. Plaintiff alleges that Defendants Commonwealth and Fund owed Plaintiff a duty of reasonable care to supervise and take steps reasonably necessary to prevent their agent, Defendant Brugger, from writing fraudulent title insurance policies and commitments. Defendants Fund and Commonwealth are alleged to have breached their duty by failing to supervise agents in a reasonable manner, failing to provide agents with sufficient and up to date instruction and guidance as to the issuance of title insurance commitments and policies, failing to take steps reasonably necessary to prevent Defendant Brugger from writing fraudulent title insurance policies, and failing to take steps reasonably necessary to prevent Defendant Brugger from us-

ing their title insurance agency to defraud Plaintiff through the scheme described *supra.*

### III. *Defendants' Motions to Dismiss State Negligence Claims*

### JURISDICTION

Pursuant to 28 U.S.C. § 1367(a), "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Further, "[s]uch jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

■ The Supreme Court has held that claims form part of the same case or controversy where they arise from a common nucleus of operative fact. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Courts have discretion to decline supplemental jurisdiction over a claim under § 1367(a) for a variety of reasons which are set forth in § 1367(c). However, none of the reasons set forth in § 1367(c) apply to Plaintiff's state law negligence claims. Plaintiff's state negligence claims form part of the same case or controversy as the RICO claims because both they all arise from a common nucleus of operative fact. Accordingly, this Court has jurisdiction over Plaintiff's state law negligence claims under the broad grant of supplemental jurisdiction in 28 U.S.C. § 1367(a) and must deny Defendants' motion to dismiss on the basis of lack of jurisdiction.

### FAILURE TO STATE A CLAIM

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion dismiss is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Under this standard, Plaintiff fails to state a claim for negligence against Defendants Fund and Commonwealth for the following reasons.

### 1. *No Duty or Proximate Cause*

■ It is well established that to prevail in a negligence action, the plaintiff must show: 1) that the defendant owed a duty of reasonable care to the plaintiff; 2) that the defendant breached that duty; 3) that the breach was the proximate cause of the injury to the plaintiff; and 4) that the plaintiff suffered damages. *Hasenfus v. Secord,* 962 F.2d 1556, 1559 (11th Cir.1992), *cert. den.,* —— U.S. ——, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). *See also Hensley v. United States,* 728 F.Supp. 716, 721 (S.D.Fla.1989); *Reinhart v. Seaboard Coast Line R.R. Co.,* 422 So.2d 41, 43 (Fla. 2d DCA 1982).

■ Initially, Plaintiff does not meet the first requirement of showing that Defendants Fund and Commonwealth owed him a duty of reasonable care. "[T]here is no common law duty to prevent the misconduct of third persons." *Trianon Park Condominium Association, Inc. v. City of Hialeah,* 468 So.2d 912, 918 (Fla.1985) (citing, Restatement (Second) of Torts § 315 (1964)). *See also State of Florida, Dept. of Corrections v. Vann,* 650 So.2d 658, 660 (Fla. 1st DCA 1995). There is no relationship between Plaintiff, holder of an unrecorded mortgage, and Defendants Fund and Commonwealth, who are title insurance companies issuing title insurance commitments to third party purchasers. Plaintiff was not a party to any of the closings on the sale of units to third party purchasers. Defendants Fund and Commonwealth had a duty only to their insureds. Plaintiff's negligence claim against these Defendants must fail, on the basis of the absence of a duty to Plaintiff.

■ In any event, the role of title insurance is limited such that it simply insures that title to property is as stated in the policy. *See, Sommers v. Smith and Berman, P.A.,* 637 So.2d 60 (Fla. 4th DCA 1994). The title insurance policies in question accurately reflected the title to the properties in showing no recorded mortgages. No recorded mortgages existed; *any* title insurance company asked to issue a policy would have issued clean title. Even if there was a duty, to establish proximate cause under Florida law, a plaintiff must show that the defendant's alleged wrong caused the damage complained of. *Hensley v. United States,*

728 F.Supp. at 722. The court uses a "but for" test in determining the existence of proximate cause. *Id.* "There must be such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred." *Id.* Since the policies would be clean if issued by any other title insurance companies using any other agent, it cannot be said that but for any omission on the part of Defendants Fund and Commonwealth Plaintiff would have been repaid his debt by Defendant Baron. Therefore, even if a duty existed, any omissions of Defendants Fund and Commonwealth were not the proximate cause of Plaintiff's injury, and the negligence claims must fail.

### 2. *Economic Loss Bar*

▮ Florida's longstanding general rule of law is that economic damages are not recoverable in a tort action where there is an absence of privity between a plaintiff and defendant. *Florida Building Inspection Services, Inc. v. The Arnold Corporation,* 20 Fla. L. Weekly D1703, 660 So.2d 730 (Fla. 3d DCA 1995) (citing *AFM Corp. v. Southern Bell Tel. and Tel. Co.,* 515 So.2d 180 (Fla. 1987); *Florida Power & Light Co. v. Westinghouse Elec. Corp.,* 510 So.2d 899 (Fla. 1987); *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc.,* 588 So.2d 631 (Fla. 3d DCA 1991); *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.,* 500 So.2d 688 (Fla. 3d DCA 1987). Plaintiff seeks purely economic damages and is not in privity with Defendants Fund and Commonwealth. Thus, Plaintiff's state law negligence claims are barred by Florida's Economic Loss Doctrine. Accordingly, it is

**ORDERED** that Defendants Commonwealth's and Fund's Motions to Dismiss (Doc. Nos. 103 and 97) are **granted.** All other pending motions related to these Defendants are rendered moot.

**DONE and ORDERED.**